UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**RICHARD IRVING VAUGHN,**<br><br>Defendant. | Case No. 26-mj-48 (MJS) |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION**

Just weeks into three probation terms—including a probation term arising from a conviction for unlawfully possessing a firearm despite being a convicted felon—Vaughn illegally acquired an AR-style firearm loaded with 26 rounds of ammunition. He then fled from police and initiated a several-minute car chase to avoid getting caught. After police apprehended Vaughn, however, he admitted that the firearm was his and that he knew he should not have it. Now, a complaint charges Vaughn with unlawfully possessing a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). *See* Complaint, ECF No. 1.

The Court should order Vaughn detained pending trial. He is eligible for pretrial detention because this case involves a felony that involved a firearm. *See* 18 U.S.C. § 3142(f)(1)(E). He is also eligible for temporary detention because he was on probation when he committed the charged offenses. *See id.* § 3142(d)(1)(A)(iii). Detention is appropriate because Vaughn has demonstrated that no release conditions can reasonably mitigate the danger his release would pose to the community.

1

**BACKGROUND**

I.    **Facts of the Offense**

In the evening of March 4, 2026, Metropolitan Police Department officers were patrolling with federal law enforcement in southeast Washington, D.C. The officers saw a gold Ford Focus driving in a bus lane then make a right turn on a red light without signaling. The officers attempted to initiate a traffic stop for traffic violations by activating their police cruiser's lights and sirens at 8:15 p.m.

The Focus initially stopped but then fled. A pursuit ensued. During the pursuit, the Focus drove recklessly on streets and through alleyways. It exceeded the speed limit, ran red lights and stop signs, drove on the wrong side of the road, and nearly struck a federal law enforcement vehicle at one point.

At around 8:18 p.m., the Focus slowed down in an alleyway. While the Focus was still in motion, one of the car's occupants exited from the passenger side of vehicle. Some of the pursuing law enforcement officers immediately stopped and arrested the passenger.

Meanwhile, the driver of the Focus continued to flee before ultimately pulling into a private driveway. The driver left the Focus running with the keys in the ignition and fled on foot. Law enforcement followed. At around 8:19 p.m., MPD officers apprehended the driver. They identified him as Richard Vaughn. Law enforcement later determined that Vaughn did not have a valid driver's license. Law enforcement did not see anyone other than Vaughn and the passenger exit the Focus during the pursuit.

When law enforcement approached the Focus in the driveway where it was parked, they could see through the windows what appeared to be a rifle in the passenger seat floorboard area. The firearm was an American Tactical, .223-caliber firearm bearing serial number NS319032.

Attached to it was a 30-round-capacity magazine containing 26 rounds of ammunition. There are no firearm or ammunition manufacturers in the District of Columbia, so the firearm and ammunition must have traveled in interstate or foreign commerce at some point previously.





**The Firearm and Ammunition Recovered from the Focus**

After Vaughn's arrest, law enforcement took him to MPD's Seventh District police station. Vaughn agreed to waive his *Miranda* rights and speak with law enforcement. During the interview, Vaughn forthrightly admitted that the firearm found in the Focus belonged to him. He said he had bought the firearm that day for about $1,100. And he reported that the car was his mother's. Vaughn explained that he had been recently released from serving about two years in prison. He acknowledged that he was not allowed to have a firearm and that he had prior felony convictions for unlawful firearm possession and robbery. When law enforcement asked Vaughn why he did not pull over for police, he said he did not want to stop because there was an "AR

3

pistol" in the car and he was on parole. He told law enforcement that he was on parole or probation in three different cases.

A complaint now charges him with again unlawfully possessing a firearm.

## II.     Vaughn's Criminal History

Just weeks before his arrest in this case, Vaughn was released from incarceration after serving at least two separate custodial sentences. He appears to have been imprisoned since 2024 and convicted of three separate offenses during that period. At the time of his arrest, Vaughn was on probation for all three of those offenses.[1]

In 2024, Vaughn was convicted in D.C. Superior Court case number 2024-CF2-007668 of unlawfully possessing a firearm after having been convicted of a crime punishable by a term of imprisonment exceeding one year. According to the Gerstein affidavits in that case, police officers encountered Vaughn in possession of an open container of alcohol. When the officers ran Vaughn through law enforcement databases, they learned that he had an arrest warrant outstanding from Montgomery County, Maryland. During a search incident to arrest, the officers found a firearm in his waistband with 11 rounds in an attached magazine. The firearm was reported stolen. Vaughn pled guilty and was sentenced to 14 months' incarceration followed by 3 years' supervised release. In Vaughn's 22 days of supervised release, he submitted falsified drug testing samples twice and tested positive for marijuana three times. Vaughn's supervision officer reported to government counsel that a violation report has been filed and a warrant issued.

In September 2025, presumably after serving his sentence in the D.C. firearm case, Vaughn

---

[1] It is unclear exactly when Vaughn was released. He started probation in two Maryland cases on January 29, 2026. He started supervised release in a D.C. case on February 10, 2026. Vaughn estimated in his postarrest interview that he had been released 20 days previously.

was convicted in Charles County (Maryland) case number C-08-CR-24-000577 of theft of property worth between $1,500 and $25,000. Based on public court records, the offense conduct appears to have occurred in September 2023. The court sentenced Vaughn to 2 years' incarceration with all but 8 months of that sentence suspended pending a 3-year term of probation.

Apparently after serving that theft sentence, Vaughn was convicted on January 29, 2026, in Montgomery County case number D-06-CR-23-005643 of theft of property worth between $100 and $1,500. Based on public court records, the offense conduct appears to have occurred in August 2023. After Vaughn's conviction, the court sentenced him to 6 months' incarceration but suspended the entire sentence pending a 2-year probationary period.[2]

Before Vaughn's spate of thefts and firearm possession in 2023 and 2024, he had received a regular series of convictions for theft-related offenses. Starting in August 2013, Vaughn was convicted in Arlington County (Virginia) case number GC13003799 of receiving stolen goods and possessing marijuana. Though he initially received a sentence of 12 months' incarceration with 10 months suspended pending probation, court records indicate that his probation was revoked and the full suspended sentence was imposed.

In December 2013, Vaughn was arrested in Washington for committing a robbery. According to an arrest warrant affidavit, in October 2013, Vaughn snuck up behind someone at a Metro station and snatched the person's iPhone. A Metro Transit Police Department detective recognized Vaughn from surveillance footage of the robbery because the detective had been with Vaughn at a hearing at the Arlington County Courthouse the morning of the robbery. Vaughn eventually pled guilty in 2014 in D.C. Superior Court case number 2013-CF3-021680. He was

---

[2] Government counsel has contacted Vaughn's Maryland probation officer to obtain more information about his two Maryland convictions.

initially sentenced in September 2014 to 30 months' incarceration under the Youth Rehabilitation Act with the whole sentence suspended pending 18 months of supervised release. But in March 2015, the court revoked his supervised release and imposed the 30-month prison sentence to be followed by 1 year of supervised release.

In November 2014, Vaughn was arrested for additional theft offenses. He pled nolo contendere in August 2016 and was convicted of petit larceny and identity theft in Arlington County case number GC14005326. For those crimes, he was sentenced to 12 months' incarceration with 9 months of that sentence suspended pending an unknown term of probation.

And in July 2017, while on supervised release at least for the D.C. robbery, Vaughn was arrested for another theft offense. He pled guilty in March 2019 in Montgomery County case number 4D00371025 to theft of property worth less than $1,000. The court sentenced him to 6 months' incarceration with 5 months suspended pending a probationary period of 1 year.

In all, Vaughn has been convicted of nine crimes, including seven theft-related offenses and a prior offense for unlawfully possessing a firearm despite being a convicted felon. Now, Vaughn has again unlawfully possessed a firearm despite being a convicted felon.

## ARGUMENT

A court must detain an eligible defendant pending trial if "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). In making that assessment, the court considers four familiar factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger the defendant's release would pose. *Id.* § 3142(g). A finding that release conditions cannot reasonably assure the community's safety must be supported

6

by clear and convincing evidence.  18 U.S.C. § 3142(f).

This Court should order Vaughn be detained pretrial because he poses a danger to the community and his conduct shows that he is unable to abide by any conditions of release that the Court would fashion.

**I.      The Nature and Circumstances of Vaughn's Offense Are Serious.**

Illegally possessing a loaded firearm in public "poses an inherent risk of danger to the community." *United States v. Blackson*, No. 23-cr-25 (BAH), 2023 WL 1778194, at *7 (D.D.C. Feb. 6, 2023) (collecting cases), *aff'd*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023); *see also United States v. Gassaway*, No. 21-cr-550 (RCL), 2021 WL 4206616, at *3 (D.D.C. Sept. 16, 2021) (collecting cases for the proposition that "unlawfully carrying a concealed or loaded firearm in public poses a risk of danger to the public").  The offense is so serious that it carries a maximum sentence of 15 years in prison.  *See United States v. Simpson*, No. CR 25-261 (RBW), 2025 WL 3211574, at *4 (D.D.C. Nov. 18, 2025).  Indeed, when it comes to pretrial detention, whether a crime involves a firearm is such an important consideration that Congress explicitly advises courts to pay particular attention when it does.  *See* 18 U.S.C. § 3142(g)(1).

The facts of Vaughn's offense show that he presents a particular danger.  For one thing, Vaughn did not possess a run-of-the-mill firearm.  The firearm appears to be an AR-style firearm—known for low recoil and accuracy—that was loaded with 26 rounds of .223 caliber ammunition. Such a weapon is more dangerous than the typical firearm.  *Cf. United States v. Jones*, 4 F. Supp. 3d 154, 156 (D.D.C. 2013) (explaining that the defendant's ownership of a "a fully-loaded, semi-automatic assault rifle" weighed in favor of detention); *United States v. Salazar Palma*, No. 2:25-cr-90, 2025 WL 1725138, at *4 (W.D. Wash. June 20, 2025) (noting as a factor favoring detention that the defendant's codefendants "had multiple firearms, including an AR-style rifle").  For

another thing, when law enforcement tried to stop Vaughn, he fled and led law enforcement on a several-minute car chase. Vaughn sped, ran red lights and stop signs, and drove on the wrong side of traffic. He later explained that he fled because the firearm was in the car and he was on probation. Vaughn thus demonstrated that he is willing to put the community and law enforcement in danger rather than accept accountability for wrongdoing.

To make matters worse, Vaughn possessed the AR-style firearm within weeks of his release from custody. He was on probation for three different convictions, including one for the D.C. Code equivalent of what he is charged with here: possessing a firearm despite being a convicted felon. *Cf. United States v. Robinson-Davis*, No. 7:22-cr-45, 2023 WL 1501636, at *2 (W.D. Va. Feb. 3, 2023) (recounting, while determining that the nature and circumstances of the offense favored pretrial detention, that the defendant "possessed [a] loaded AR-style rifle (and the following day, a loaded pistol)" a week after being released pending trial for a state felony gun charge). Even though Vaughn had two suspended sentences and a term of supervised release hanging over his head, he chose to acquire a firearm. *See United States v. Kent*, 496 F. Supp. 3d 500, 502 (D.D.C. 2020) ("Of particular significance is that Defendant was on supervised release at the time of his arrest in this matter[.]" (citation omitted)). "The fact that he violated one of the most important conditions of his release—that he should not engage in other criminal activity—indicates that [he] is unwilling to conform his conduct to the dictates of the law." *See United States v. Wills*, 311 F. Supp. 3d 144, 148 (D.D.C. 2018) (ordering a defendant detained pretrial when "he was arrested on [firearm and drug charges] a scant two months after his release from prison on [a] robbery charge"); *see also Blackson*, 2023 WL 1778194, at *8 ("[D]efendant was on supervision at the time of his arrest making evident his disregard of the law forbidding his possession of a

firearm and automatically raising concern about whether he can be trusted to comply with any conditions of pretrial release.").

Vaughn's conduct shows that he presents a danger to the community that cannot be mitigated by conditions of pretrial release. The first factor weighs heavily in favor of detention.

## II. The Weight of the Evidence Against Vaughn Is Strong.

The evidence against Vaughn is compelling. Not only did law enforcement quickly recover a firearm from the car Vaughn was driving, but Vaughn confessed in a recorded interview to the crime he is charged with. Vaughn admitted that the AR-style firearm was his. Vaughn admitted that he knew he was not supposed to possess the firearm because he had been previously convicted of felonies. Vaughn even admitted that he was on probation and fled because he knew he would get in trouble. Vaughn thus confessed to both the crime and facts that make his offense particularly troubling. *See United States v. Fisher*, 183 F. Supp. 3d 167, 169 (D.D.C. 2016) (listing among the "exceptionally strong" evidence that "heavily favor[ed] pretrial detention" a defendant's confession). The evidence against Vaughn favors detention. *See Blackson*, 2023 WL 1778194, at *10 ("[I]f the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that . . . may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true.").

## III. Vaughn's History and Characteristics Indicate that Detention Is Necessary.

Vaughn has an abysmal track record of abiding by the law and court-imposed conditions of supervision. Since 2013, he has been convicted of nine crimes, including seven theft-related offenses and a prior offense for unlawfully possessing a firearm despite being a convicted felon. Courts have repeatedly given Vaughn chances to correct his behavior by suspending sentences and giving him probation, but Vaughn has repeatedly spurned those chances. He committed a robbery

9

in D.C. while on probation in Arlington (and apparently on the same day as a hearing in his Arlington case).  While on supervised release for the robbery—during which time his entire 30-month prison sentence under the Youth Rehabilitation Act was suspended—Vaughn was arrested for additional theft charges in Arlington.  After that term of supervised release was revoked, Vaughn served time in prison, and he received new term of supervised release.  Vaughn then violated his supervised release in the D.C. robbery case again when (less than a year after his latest Arlington theft convictions) he committed another theft in Montgomery County.

The facts of this case indicate that Vaughn remains unwilling to follow both the law and court orders.  Vaughn was mere weeks into three terms of probation in three different cases—including one for unlawfully possessing a firearm—when he acquired another firearm.  He then fled from police—putting others' lives at stake—rather than submit to a traffic stop.  Given Vaughn's consistent record of committing crimes while under court supervision, this Court should expect no different now.  As has been true in the past, Vaughn's release would present a danger to the community that court-imposed conditions are unable to address.

### IV. Releasing Vaughn Would Jeopardize the Community's Safety.

Vaughn's release would pose a danger to the safety and security of the community.  Even before his recent firearm offenses, Vaughn's long line of theft offenses established that he presented a threat to community members and their property.  He has now escalated his behavior by unlawfully possessing firearms.  The mere possession of a loaded firearm makes the community a more dangerous place.  *See Kent*, 496 F. Supp. 3d at 506 ("Firearms present a risk of danger from either intentional or unintentional discharge; each risk has the potential to cause injury or death to members of the community.").  And between his history of theft and his flight in this case, Vaughn has demonstrated that he is willing to put himself—and the community—in dangerous situations

in which the presence of a firearm presents a particular risk. Vaughn poses a present danger to the community's physical safety that cannot be mitigated by conditions of release.

## CONCLUSION

The government asks the Court order Vaughn's pretrial detention because he would otherwise pose a danger to the community that release conditions cannot mitigate.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: */s/ Blake J. Ellison*
BLAKE J. ELLISON
Assistant United States Attorney
TX Bar No. 24117203
601 D Street NW
Washington, D.C. 20530
Phone: 202-436-5921
blake.ellison@usdoj.gov